United States District Court
Southern District of Texas
**ENTERED**
November 09, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON HUBBARD, | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-1424 |
| STATE FARM LLOYDS, | § | |
| *Defendant*. | § | |

**ORDER**

Pending before the Court is Defendant State Farm Lloyds' ("State Farm") Motion for Summary Judgment. (Doc. No. 10). Plaintiff Jason Hubbard ("Plaintiff" or "Hubbard") has responded in opposition, (Doc. No. 14), and State Farm has replied in support of their motion. (Doc. No. 20). After considering the motion, the admissible summary judgment evidence, and the law, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** State Farm's Motion for Summary Judgment.

## I. Background

This is a home insurance coverage dispute arising out of a water leak at Plaintiff's home.

### A. The Policy

Hubbard was the insured under a State Farm home insurance policy, which contained three provisions relevant to this case. First, the Policy provided for "A1 Replacement Cost Loss Settlement." That Policy provides that "[State Farm] will settle covered property losses according to the following: . . . [State Farm] will pay the cost to repair or replace with similar construction and for the same use . . . the damaged part of the property . . . ." (Doc. No. 10–1 (Policy) at 45).

Second, the Policy contained coverage for "Additional Living Expense [ALE]." (Policy at 35). Under that provision, "[w]hen a **loss insured** causes the **residence premises** to become uninhabitable, [State Farm] will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living." (*Id.*) (emphasis in original).

Third, the Policy contained coverage for "Property Removed," which stated that: "[State Farm] will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a loss insured." (Policy at 36) (emphasis added). "[State Farm] will also pay for reasonable expenses incurred by [Hubbard] for the removal and return of the covered property." (*Id.*).

**B. The Dispute**

In January of 2024, the water-supply line to Plaintiff's refrigerator burst, damaging the kitchen floors, cabinets, and living areas of the home. (Doc. 10–2 at 2-3). In the following days, Plaintiff hired Woodlands Water Restoration, who began performing mitigation work, (*Id.*), along with a public adjuster to make an estimate of the covered damage. Plaintiff eventually also hired Protégé Homes, who performed the repair and replacement work. (*Id.* at 5).

State Farm determined that the home was uninhabitable, and paid for Hubbard and his family to stay at the Post Oak hotel for the eight months it took to repair Hubbard's home. State Farm's adjuster estimated that the cost to "repair or replace with similar construction" the damage to Hubbard's home was $171,314.47. (Doc. No. 14–2 at 4). Hubbard's public adjuster, Homer Allen, III, prepared an independent estimate of the same totaling $325,718.01. (*Id.*).

In addition to the dispute over the full cost of covered repairs, Hubbard seeks payment for his couches, which he claims were "soiled by the mitigation crew that packed them out." (Doc. No. 14 at 13). State Farm denied coverage for this expense. Hubbard also seeks payment of his

dining and dog boarding expenses during the period his home was uninhabitable under the ALE provision of the policy. State Farm argues that it is not obligated to pay these expenses because Hubbard never provided documentation of his "baseline" dining or boarding expenses.

State Farm apparently reached out to Hubbard and explained the necessity of baseline numbers in order to determine the necessary increase in costs, and requested documentation from Hubbard of the amount that the Hubbard family usually spent per week on groceries and dining out. (Doc. No. 10–2 at ¶ 11). Hubbard did not provide that information in response to State Farm's request. (*Id.* at ¶ 36). The same is true for the dog boarding expenses. (*Id.* at ¶¶ 34, 35).

Hubbard has now brought suit against State Farm for breach of contract, seeking payment of additional repair/replacement costs, dining costs, and the cost of replacing his soiled couches. He has also brought claims for violations of Texas Insurance Code Chapter 541, Chapter 542, and the common law duty of good faith and fair dealing State Farm has moved for Summary Judgment on all of Hubbard's claims.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact

is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. Analysis

Hubbard has asserted claims for breach of contract, violations of the Texas Insurance Code Chapter 541, violations of the Texas Insurance Code Chapter 542, and breach of the common law duty of good faith and fair dealing. State Farm has moved for summary judgment on all of Hubbard's claims. The Court will address each in turn. As an initial matter, however, Hubbard has also objected under Federal Rule of Civil Procedure 56(c)(2) to certain items of summary judgment evidence. Rule 52(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). Before turning to the claims, the Court considers those objections.

### A. Objections to summary judgment evidence

First, Hubbard objects to a "comparison estimate" prepared by Randall Taylor, a contractor who performed a site inspection at Hubbard's home. (Doc. No. 10–4). Taylor estimated that "the reasonable and necessary scope of work is $174,073.33 on a replacement cost basis." (Doc. No.

10–4 at 8). That estimate contains the following disclaimer: "the following estimate is for comparison purposes only and is not intended as a statement of the cause or extent of covered damages." (Doc. No. 10–4 at 20). Hubbard argues, based on this, that the Court cannot consider this evidence at all. The fact that an estimate was prepared for comparison purposes may go to the weight to be given the evidence, but it is not a ground for ruling that said evidence "cannot be presented in a form that would be admissible in evidence." *See* FED. R. CIV. P. 56(c)(2). This objection is **overruled**.

Second, Hubbard objects to a statement in State Farm's Motion for Summary Judgment that Plaintiff's chosen repair contractor charged in excess of what was usual and customary. Hubbard argues that this assertion is unsupported by the portion of the record that State Farm cites and, as such, the Court cannot consider it. This objection, by its terms, is not an objection that the material cited in support of State Farm's assertion is inadmissible. *See* FED. R. CIV. P. 56(c)(2). That being the case, this objection is also **overruled**.

Third, Hubbard objects to "the characterization [in State Farm's motion] of the June 26, 2024 reconciliation." This is not an objection to the admissibility of evidence. It is **overruled**.

Fourth, Hubbard objects to State Farm's expert reports being labelled as "business records," arguing that these reports were prepared in anticipation of litigation and are therefore not admissible under Federal Rule of Evidence 803(6). Federal Rule of Civil Procedure 56(c)(2) explicitly contemplates this situation, and states that the relevant question at the summary judgment stage is whether "the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2) (emphasis added). As Hubbard acknowledges, the contents of these reports may be admissible as "expert opinion subject to cross-examination and weighing by the jury." (Doc. No. 14 at 18). That being the case, while the form

in which the expert testimony *is* presented (expert reports) would not be admissible in evidence at trial, the expert testimony *can* be presented in an admissible form (via the expert's live testimony). That is all that Rule 56 requires. Hubbard's fourth and final objection is **overruled**.

**B. Breach of contract**

The parties agree that Texas law controls this case. In order to recover for a breach of contract under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018). In an insurance case, insurers are "liable only for losses covered by the policy." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). "The insured bears the burden of establishing that its claim is covered by the policy." *Id.* Additionally, "when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Id.*

The parties here do not dispute the existence of a valid insurance contract or payment of premiums by the plaintiff. The parties also do not dispute that a covered loss occurred; in other words, State Farm acknowledges that the water leak in Hubbard's home was a loss covered under the Policy. Instead, the parties' dispute focuses on whether State Farm breached the Policy by failing to provide sufficient payment for damages caused by the covered loss. Specifically, Hubbard alleges that State Farm failed to pay the complete amount owed under three[1] categories of coverage: (1) the repair/replacement cost of work done on Hubbard's home as a result of the

[1] Hubbard, in his response, abandons his claims for reimbursement for re-keying the property, replacing the refrigerator and coffee maker, relocating electrical sockets, and the electric bill. (Doc. No. 14 at 13). That being the case, summary judgment is **GRANTED** on those claims.

covered loss, (2) the increased cost of maintaining Hubbard's standard of living while the home was uninhabitable, and (3) the cost of damage caused to covered property while being removed from premises endangered by a covered loss. The Court will address each in turn.

**1. Repair/replacement costs**

Hubbard purchased State Farm's "A1 Replacement Cost Loss Settlement" policy. That Policy provides that "[State Farm] will settle covered property losses according to the following: . . . [State Farm] will pay the cost to repair or replace with similar construction and for the same use . . . the damaged part of the property . . . ." (Doc. No. 10–1 (Policy) at 45). In other words, the Policy provides that, in the event of a covered loss—which the parties agree occurred here—State Farm would pay costs associated with repairing or replacing the damage to Hubbard's home with similar construction. This is in contrast to State Farm's "A2 Replacement Cost Loss Settlement" option, under which State Farm would pay "only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction." (Policy at 46).

State Farm argues that the repair and replacement work performed by Hubbard's chosen contractor exceeded the cost of covered "similar construction," and that Hubbard cannot point to evidence creating a genuine issue of material fact as to whether the expenses he incurred above and beyond State Farm's $171,314.47 estimate were covered under "similar construction." Hubbard, in response, points to the affidavit and report of Homer Allen, III, a licensed public insurance adjuster in Texas. Allen personally inspected Hubbard's home and prepared an independent estimate of the cost to repair the water damage. Allen concluded that, to restore the home to its pre-loss condition using "materials of like kind and quality to those that were in the home before the loss," would cost $325,718.01. (Doc. No. 14–2 at 4).

A reasonable jury would be entitled to credit Allen's estimate over State Farm's, and thus determine that the actual cost of repair/replacement in Hubbard's home with similar construction exceeded the amount that State Farm paid. That being the case, Hubbard has raised a genuine issue of material fact as to his breach of contract claim for repair/replacement costs. State Farm's Motion for Summary Judgment is **DENIED** with respect to Hubbard's claim for repair/replacement costs.

**2. Living costs**

Hubbard's State Farm Policy also contained coverage for "Additional Living Expense [ALE]." (Policy at 35). Under that provision, "[w]hen a loss insured causes the residence premises to become uninhabitable, [State Farm] will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living." (*Id.*).

State Farm paid for Hubbard and his family to stay at the Post Oak hotel for the eight months it took to repair Hubbard's home. State Farm did *not* pay for Hubbard's dining expenses or expenses for boarding Hubbard's family dog incurred during that time. State Farm argues that it could not have paid the reasonable and necessary *increase* in these costs because Hubbard failed to provide State Farm with documentation of what his baseline (pre-incident) costs for these categories were. In his summary judgment response, Hubbard provided an affidavit detailing—for the first time—his baseline dining and dog boarding costs.

Hubbard's claim for dining and dog boarding expenses fails as a matter of law for two independent reasons. First, the Policy states that:

> After a loss to which this insurance may apply, [Hubbard] must cooperate with [State Farm] in the investigation of the claim and also see that the following duties are performed: . . . (d.) as often as we reasonably require: . . . (2) provide [State Farm] with any requested records and documents and allow [State Farm] to make copies.

(Policy at 47). The uncontroverted summary judgment evidence shows that State Farm explained the necessity of baseline numbers in order to determine the necessary increase in costs, and—on

January 22, 2024—requested documentation from Hubbard of the amount that the Hubbard family usually spent per week on groceries and dining out. (Doc. No. 10–2 at ¶ 11). Hubbard did not provide that information in response to State Farm's request. (*Id.* at ¶ 36). The same is true for the dog boarding expenses. (*Id.* at ¶¶ 34, 35). As set out above, Hubbard first provided that information *after* he filed this lawsuit, in his Response to State Farm's Motion for Summary Judgment on October 21, 2026. That being the case, Hubbard failed to comply with the Policy by providing the documentation necessary for his claim for additional living expenses, and is—as a result—not entitled to recover those expenses.

Additionally, even if Hubbard had not been required to provide this information before litigation commenced, he was required to provide it at the outset of litigation. Federal Rule of Civil Procedure 26(a)(1)(A), which governs required initial disclosures, provides that a party must, by fourteen days after the Rule 26(f) initial conference, disclose to the other party:

> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

Fed. R. Civ. P. 26(a)(1)(A)(ii) and (iii). Hubbard is claiming damages for unpaid additional living expenses in this case. That being the case, Hubbard was required, at least by fourteen days after the parties' Rule 26(f) conference, to provide documentation of his baseline living expenses—which would necessarily support Hubbard's claim for additional living expenses and set his damages amount—to State Farm. He did not do so. Hubbard cannot now claim that State Farm breached its obligation to pay him for additional living expenses when he (1) failed to provide

information necessary for State Farm to make those payments and (2) now offers in support of that claim only evidence which he failed to timely disclose in this case. State Farm's Motion for Summary Judgment is **GRANTED** with respect to Hubbard's claim for additional living expenses.

**3. Damage to covered property while being removed**

Finally, Hubbard's State Farm insurance policy contained coverage for "Property Removed," which states that: "[State Farm] will pay for any accidental direct physical loss to covered property while being removed from a **premises endangered** by a loss insured." (Policy at 36) (emphasis added). "[State Farm] will also pay for reasonable expenses incurred by [Hubbard] for the removal and return of the covered property." (*Id.*).

Hubbard claims that his couches were "soiled by the mitigation crew that packed them out." (Doc. No. 14 at 13). As discussed above, State Farm has conceded that the water leak was an insured loss. State Farm also does not appear to dispute that the couches were "covered property." Instead, State Farm argues that Hubbard "has not established that the premises were endangered by the reported water loss or that the alleged damage occurred under circumstances triggering this additional coverage." (Doc. No. 20 at 9). Whether or not the water leak "endangered" the premises depends on the meaning of the term "endangered" in the context of the Policy. That is a question of contract interpretation.

"In Texas, insurance policies are contracts subject to the rules of contract construction." *Lowen Valley View, L.L.C.*, 892 F.3d at 170. "Under Texas law, undefined contract terms are generally given their plain, ordinary, and generally accepted meanings . . ." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007). The term "endangered" is not defined in the policy. (*See* Policy at 28-32 ("Definitions")). Merriam-Webster defines "endangered" as the past tense of "endanger," which means "to bring into danger or peril." *Endanger*, MERRIAM-

WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/endanger (last visited November 5, 2026). This also comports with the common usage of the term. That being the case, the Court will adopt this definition as the "plain, ordinary, and generally accepted meaning[]" of "endangered." *See Nichols*, 495 F.3d at 190).

No doubt, a water leak is bound to bring a home into some amount of danger or peril. That being the case, State Farm's argument can only be understood as an argument that the water leak in Hubbard's home did not bring his home into *sufficient* danger or peril to meet the definition of "endangered" in the Policy. Presumably, State Farm has in mind the danger of total loss or—in other words—the danger that the home will be entirely destroyed.

This argument fails for two reasons. First, the Court is unable to identify—and State Farm has not attempted to point to—a usable standard under which a court (much less an insured individual or insurance adjuster working quickly following a covered loss) could determine what amount of danger to the home is sufficient to bring an insured within the coverage of the "Property Removed" provision.[2] Second, even if the Court were inclined to undertake such an exercise, Texas law dictates that "when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Lowen Valley View, L.L.C.*, 892 F.3d at 170.

That being the case, the Court construes the policy term "endangered" to encompass at least the situation at hand here. State Farm's Motion for Summary Judgment is **DENIED** with respect to Hubbard's claim for damage to his couches caused during the removal of those couches from his home.

---

[2] Whether the covered property, as opposed to the premises, was endangered by a covered loss would almost certainly be more readily determinable in any given case. This reading is not, however, supported by the language of the Policy, and State Farm does not urge the Court to adopt it.

**C. Texas Insurance Code Chapter 541 and good faith and fair dealing**

Hubbard has alleged several violations of Texas Insurance Code Chapter 541. Specifically, Hubbard alleges that State Farm violated Chapter 541.060(a)(2)(A) and (a)(7) by failing to perform a reasonable investigation and unreasonably delaying after liability became reasonably clear; and Chapter 541.060(a)(1) and 541.061 by misrepresenting a policy provision relating to coverage at issue. *See* TEX. INS. CODE § 541.060(a)(2)(A), (a)(7), (a)(1).

**1. Chapter 541.060(a)(2)(A) and (a)(7)**

Hubbard's causes of action under Chapter 541.060(a)(2)(A) and (a)(7) "share the same predicate for recovery as a bad faith claim." *Switzer v. State Farm Lloyds*, 642 F.Supp.3d 568, 572 (W.D. Tex. Nov. 22, 2022) (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)). "An insurer breaches this duty and will be liable if it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Id.* (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–61 (Tex. 1997)). "As long as the insurer has a reasonable basis to deny . . . a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* (quoting *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)). "[E]vidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997).

In this case, State Farm points to two expert reports as a basis for showing that their claim decision was reasonable, both of which were obtained for purposes of this litigation. Hubbard is correct to argue that these opinions cannot have served as the basis for State Farm's coverage decision. *See Viles v. Security Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("Whether there is a reasonable basis for denial, however, must be judged by the facts before the insurer at the time

the claim was denied."). That being the case, the fact that State Farm's experts' opinions cannot have formed the basis of State Farm's denial of coverage does not mean that those opinions cannot be some evidence that State Farm had a reasonable basis to deny Hubbard's claim.

Hubbard argues primarily that State Farm's denial of additional coverage was unreasonable because State Farm, in its reconciliation, increased its estimate from $171,314.47 to $182,349.58, and never paid the difference. (Doc. No. 10–2 at 144-45). One of the line-items adjusted upward in the reconciliation contains the notation "please provide the quantity," while the other states that it was adjusting the estimate for "sand, stain, and finish along with other applicable line items." (*Id.* at 144). Following that estimate, State Farm sent Hubbard an email stating that "due to not having all information needed to properly reconcile Protégé Home's [sic] estimate, we are unable to adjust or make any supplemental payments towards this estimate *if warranted*. (Doc. No. 10–2 at 154). This evidence is not sufficient for a reasonable jury to determine that State Farm did not have a reasonable basis to deny additional payment. *See Switzer*, 642 F.Supp.3d at 572. If anything, it shows exactly why State Farm denied additional payment: it needed additional information from Hubbard's contractor. In sum, Hubbard's evidence shows "only a bona fide coverage dispute" and therefore "does not, standing alone, demonstrate bad faith." *Nicolau*, 951 S.W.2d at 448.

State Farm's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Claims under Chapter 541.060(a)(2)(A) and (a)(7), and under the common law duty of good faith and fair dealing.

**2. Chapter 541.060(a)(1) and 541.061**

Next, Plaintiff alleges violations of Texas Insurance Code Chapter 541.060(a)(1) and 541.061, based on the theory that State Farm misrepresented the substance of the Policy in denying coverage. "[A] carrier's statement to the insured that coverage is denied [does not] amount to

actionable misrepresentation merely because it is later determined that coverage was appropriate." *Effinger v. Cambridge Integrated Servs. Group*, 478 F. App'x 804, 807 (5th Cir. 2011). In addition to this, even if Hubbard could show that State Farm had made an actionable misrepresentation, he cannot show that he detrimentally relied on this misrepresentation. He hired Protégé Homes and authorized them to begin work before State Farm made any representation to him that this level of construction would not be covered, and continued to use them afterwards.

State Farm's Motion for Summary Judgment is **GRANTED** as to Hubbard's misrepresentation claims.

**D. Texas Insurance Code Chapter 542**

Hubbard also brings a claim under Chapter 542 of the Texas Insurance Code. Texas Insurance Code Chapter 542—also referred to as the Texas Prompt Payment of Claims Act ("TPPCA")—"sets out guidelines facilitating the timely payment of insurance claims." *Alcala v. Republic Lloyds*, No. 13-18-00026-CV, 2020 WL 830840, at *3 (Tex. App.—Corpus Christi Feb. 20, 2020, no pet.) (citing *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019)). To prove a claim under Chapter 542 the plaintiff must prove: (1) the insurer's liability under the insurance policy, and (2) that the insured has failed to comply with one or more sections of the TPPCA in processing or paying the claim. *Id.*

"An insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 159 (5th Cir. 2024) (citing *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021). That is exactly the situation here. State Farm does not dispute that the statutory deadline has expired. That being said, there is a fact issue as to State Farm's additional liability under the insurance policy. If a jury finds that State Farm is liable for

additional amounts under the policy, it would be liable for statutory interest on that amount under the TPPCA. *See id.* ("Interest accrues only on the unpaid portion of a claim."). State Farm's Motion for Summary Judgment is **DENIED** with respect to Hubbard's Chapter 542 claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** State Farm's Motion for Summary Judgment. (Doc. No. 10). Hubbard's claims for: (1) Breach of contract with respect to (a) repair/replacement costs, and (b) damage to property removed; and (2) violation of the TPPCA remain live. Hubbard's misrepresentation claims, his bad faith claims, and his breach of contract claims for additional living expenses are dismissed with prejudice.

It is so ordered.

Signed on this the 9th day of November 2026.

Andrew S. Hanen
United States District Judge